# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $5,000 IN FUNDS ON DEPOSIT IN JP MORGAN CHASE BANK ACCOUNT ENDING IN 5992 HELD IN THE NAME OF NWAKANMA COLLINS

Case Number: 19-M-019

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Brian Wallander, being duly sworn depose and say:

I am a Police Officer and Task Force Agent assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force, and have reason to believe that in the Southern District of New York there is now certain property, namely, up to $5,000 in funds on deposit in JP Morgan Chase Bank account ending in 5992 held in the name of Nwakanma Collins that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that is derived from proceeds traceable to specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.

    ❑ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Sworn to before me, and subscribed in my presence

Signature of Affiant
Brian Wallander, USSS

Jan. 17, 2019 2:03 p.m.
Date and time issued

at Milwaukee, Wisconsin
City and State

David E. Jones, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Brian Wallander, having been duly sworn on oath, state as follows:

## Affiant's Background

1. I am a Police Officer with the Greenfield Police Department and have been employed with that department since 1996. I am currently assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force ("MFCTF"). I was federally deputized in October 2015. My duties as a Police Officer and Task Force Agent with the Secret Service include investigating financial crimes such as identity fraud, check fraud, credit card fraud, bank fraud, wire fraud, currency-counterfeiting offenses, and money laundering. During my employment with the Greenfield Police Department and the MFCTF, I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

2. As a Police Officer and Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including conducting undercover operations, reviewing physical and electronic evidence, obtaining and reviewing financial records, and working with cooperating sources of information. In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, and ownership of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and other law enforcement officers, including police officers of the Greenfield Police Department, all of whom I believe to be truthful and reliable.

## Property Sought to be Seized

5. I submit this affidavit in support of an application for a warrant to seize up to $5,000.00 in funds on deposit in JP Morgan Chase Bank account ending in 5992 ("JPM 5992"), held in the name of Nwakanma Collins.

6. For the reasons set forth below, I submit that up to $5,000.00 in funds on deposit in JPM 5992 are:

    a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343;

    b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

    c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

    d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

### Summary of Scheme to Defraud

7. I submit that there exists probable cause to believe that up to $5,000.00 in proceeds of a wire fraud scheme – which involved material misrepresentations and the use of interstate wires in connection with a romance fraud scam – have been deposited into JPM 5992, the account from which up to that amount of funds are sought to be seized.

8. As a part of the romance fraud aspect of the fraud scheme, an unknown suspect or suspects caused $12,000 to be wire transferred from the victim's Lake Michigan Credit Union account and Wells Fargo account into two different banks located outside this judicial district:

    a. $7,000 into Chevron Federal Credit Union Bank account ending in 5910, held in the name of a person having the initials B.O.; and

    b. $5,000 into JPM 5992, held in the name of Nwakanma Collins – which are the funds sought to be seized.

### Facts Supporting Findings of Probable Cause

**Common attributes of cross-border fraud schemes**

9. According to a March 2013 publication of the U.S. Federal Trade Commission, consumers lose hundreds of millions of dollars annually to cross-border financial crimes. Some of the most common cross-border financial schemes originate in West African nations such as Nigeria. Law enforcement agencies therefore sometimes refer to such schemes as "West African fraud schemes."

10. One common West African fraud scheme is a romance scam, in which a fraudster uses electronic messages, sent via email or social media services, to delude the victim in the United States into believing that the victim is in a romantic relationship with the person the

2

fraudster purports to be. The fraudster then causes the victim to wire money to an account controlled by the fraudster on false pretenses.

11. Foreign perpetrators of such scams sometimes recruit witting or unwitting persons within the United States to open bank accounts that the foreign perpetrators use to receive proceeds of the scam. The foreign perpetrators often target persons within the United States who lack education or common sense, or who are seeking companionship, to open such accounts at financial institutions within the United States. Sometimes those accounts are opened by a victim of a romance scam. Sometimes the accounts used to receive proceeds of a West African fraud scam are opened in the name of a fictitious business, such as a limited liability company, in order to conceal the fraudulent nature of the recipient bank account from victims and victims' financial institutions.

**Statement of victim J.R. regarding romance fraud scheme**

12. On July 31, 2018, Greenfield Police Officer Steven Springob spoke with a female individual having the initials J.R., who reported being the victim of a romance scam. J.R. stated that she resided at 4XXX S. Greenbrook Terrace, Apartment XXXXX in Greenfield, Wisconsin, which is in the Eastern District of Wisconsin.

13. J.R. explained that around May 30, 2017, she began an online relationship with a person she met through the online dating website, Tinder.com. J.R. knew this person as "Lukas Lukas Mehler" or "Lukas Mehler." "Lukas Mehler" provided J.R. with an email address of lukaslukas mXXXXXXX@gmail.com and a possible phone number of 424-235-1XXX.

14. J.R. said that she never met "Lukas Mehler" in person and only spoke with "Lukas Mehler" over the phone and by email and text communications. "Lukas Mehler" told J.R. that "Lukas Mehler" was from Madison, Wisconsin, but was going to be moving to the Milwaukee, Wisconsin area. "Lukas Mehler" later stated that he had moved to California and then eventually to Johannesburg, South Africa.

15. "Lukas Mehler" told J.R. that "Lukas Mehler" was a civil engineer and was working on a large project in South Africa. "Lukas Mehler" also told J.R. that there were some problems with a contract that "Lukas Mehler" had for this building project and that "Lukas Mehler" was stranded in South Africa. Beginning around August 2017, "Lukas Mehler" requested that J.R. send "Lukas Mehler" small amounts of money using Western Union. "Lukas Mehler" said that he would pay J.R. back once "Lukas Mehler" could get the issues with the contract settled.

16. J.R. provided Officer Springob with documentation of the payments that J.R. had made via Western Union. From August 24, 2017, through April 20, 2018, at the direction of the person J.R. believed to be "Lukas Mehler," J.R. sent 29 payments, totaling $22,401.00, to various people that "Lukas Mehler" stated worked for him or for companies with which "Lukas Mehler" purported to be affiliated in South Africa.

17.     J.R. also stated that, on several occasions, "Lukas Mehler" sent checks to J.R. with the request that J.R. cash those checks. J.R. never cashed those checks because when J.R. took the checks to the bank, J.R. was informed that the checks were counterfeit.

**J.R.'s March 28, 2018 wiring of $7,000 in fraud proceeds into Chevron Federal Credit Union account ending in 5910 held in the name of a person having the initials B.O.**

18.     J.R. provided Officer Springob with documentation of a wire transfer that J.R. completed on March 28, 2018. In that transaction, J.R. wired $7,000.00 at the direction of "Lukas Mehler" from J.R.'s Lake Michigan Credit Union account ending in 0678 to a beneficiary account at Chevron Federal Credit Union ending in 5910, held in the name of person having the initials B.O. and listed address of 4XX 14th Street, Oakland, California 94612.

19.     "Lukas Mehler" told J.R. that this $7,000.00 was to pay attorney's fees. "Lukas Mehler" told J.R. that he had finished a job in South Africa and was about to get paid for that job but the money was tied up for legal reasons and he needed the $7,000.00 to hire an attorney so he could speed up the process of getting paid.

20.     Law Enforcement contacted Chevron Federal Credit Union Fraud Investigator L.M., who subsequently contacted their account holder, B.O., about the $7,000 deposit on March 28, 2018, into account ending in 5910 from J.R.'s Lake Michigan Credit Union account ending in 0678. B.O. denied being involved in defrauding J.R. and said there must have been some mistake.

21.     On or about December 29, 2018, B.O. voluntarily returned the $7,000.00 to Chevron Federal Credit Union. Chevron Federal Credit Union then disbursed the $7,000.00 back to J.R.'s Lake Michigan Credit Union account.

**J.R.'s April 20, 2018 wiring of $5,000 in fraud proceeds into JPM 5992**

22.     J.R. provided Officer Springob with documentation of a wire transfer completed on April 20, 2018, in which J.R. wired $5,000 at the direction of "Lukas Mehler" from J.R.'s Wells Fargo account ending in 5446 to JPM 5992.

23.     J.R. stated that "Lukas Mehler" told her to deposit $5,000.00 into JPM 5992, supposedly to pay attorney's fees for "Lukas Mehler." "Lukas Mehler" told J.R. that he had finished a job in South Africa and was about to get paid for it but that the money had gotten tied up for legal reasons and that "Lukas Mehler" needed another $5,000.00 so that he could speed up the process of getting paid.

24.     On April 20, 2018, as instructed by "Lukas Mehler," J.R. wire transferred $5,000.00 from J.R.'s Wells Fargo account ending in 5446 into JPM 5992.

25.     To fund these wirings, J.R. has incurred debts and has lost a significant amount of retirement savings.

4

26. J.R. never met "Lukas Mehler" in person or corresponded with "Lukas Mehler" via video teleconference. J.R.'s communications with "Lukas Mehler" were only via email and telephone.

27. J.R. reported to Officer Springob that J.R. had been deceived and that she would not have wired $5,000.00 to Nwakanma Collins' JP Morgan Chase Bank account ending in 5992 if J.R. had not been deceived on false and fraudulent pretenses by the person J.R. believed to be "Lukas Mehler."

28. J.R. further stated that she believes that she has been victimized through a romance fraud scam.

29. As of January 15, 2019, J.R. has not received money back from the romance fraud scam.

30. I therefore submit that there exists probable cause to believe that the $5,000 that "Lukas Mehler" caused J.R. to wire from her Wells Fargo account to JPM 5992 on April 20, 2018, consisted of proceeds of a romance fraud scam.

**Applicable Money Asset Forfeiture Provisions**

31. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

32. Section 984 (a) provides in part:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
>> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>>
>> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

33. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

5

34.     Thus, under Section 984, a court may order the forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

35.     I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to seized for forfeiture by the accompanying seizure warrants.

## Conclusion

36.     Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $5,000.00 in funds on deposit in JP Morgan Chase Bank account ending in 5992, held in the name of Nwakanma Collins, are:

    a.    Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation 18 U.S.C. § 1343;

    b.    Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

    c.    Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

    d.    Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

### #

6

Case 2:19-mj-00019-DEJ   Filed 03/07/19   Page 7 of 7   Document 1